Filed 8/7/25  P. v. Santos CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

      Plaintiff and Respondent,

v.

JOSE RODOLFO SANTOS,

      Defendant and Appellant.

E084025

(Super.Ct.No. FVA020834)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Daniel W. Detienne, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2024, the trial court recalled the sentence of Jose Santos under Penal Code section 1172.1 and resentenced him, reducing his sentence from 42 years to life to 40 years to life. (Undesignated statutory references are to the Penal Code.) The court declined to reduce the sentence further by striking a firearm enhancement or imposing an uncharged, lesser included enhancement. Santos appeals, and we affirm.

BACKGROUND

Santos shot Jesse Avalos at close range at a party in 2003. Avalos had attempted to intervene in a fight at the party and refused to back away when so instructed by Santos, so Santos retrieved a gun and fired it three times, killing Avalos and injuring a bystander, Jesse Chavez.

In 2004, a jury convicted Santos of one count of second degree murder (§ 187, subd. (a); count 1) for the killing of Avalos. The jury also found Santos guilty of one count of grossly negligent discharge of a firearm (§ 246.3, subd. (a); count 2) and found true allegations that Santos personally discharged a firearm causing the death of Avalos (§ 12022.53, subd. (d)) and that Santos inflicted great bodily injury on Chavez (§ 12022.7, subd. (a)).

The trial court sentenced Santos to an aggregate sentence of 46 years to life in state prison, composed of consecutive sentences of 15 years to life for count 1, 25 years to life for the firearm enhancement, the upper term of three years for count 2, and three years for the great bodily injury enhancement. Santos appealed, and we affirmed the

2

convictions but remanded for resentencing on count 2 and to strike the great bodily injury enhancement. (*People v. Santos* (Jan. 22, 2008, E041713) [nonpub. opn.].) On remand, the trial court sentenced Santos to 42 years to life in state prison by imposing the same consecutive terms for count 1 and the firearm enhancement, imposing a consecutive term of two years on count 2, and striking the great bodily injury enhancement.

In 2023, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) submitted a letter to the trial court recommending that the court recall Santos's sentence and resentence him under subdivision (a)(1) of section 1172.1 (§ 1172.1(a)(1)). The recommendation was based on Santos's "exceptional conduct while incarcerated." The letter was accompanied by a cumulative case summary and evaluation report that included a nine-page list describing in detail (1) the programs that Santos had completed and in which he voluntarily participated, (2) the many positive commendations that he received, and (3) his educational and work achievements.

The People filed written opposition, arguing that the sentence was appropriate given the severity of the offenses and that Santos's good behavior in prison did not warrant imposition of a shorter sentence.

The trial court held a hearing on the matter in May 2024. At the hearing, the court indicated that it had reviewed the cumulative case summary and evaluation report provided by the CDCR, the People's opposition, the closing arguments presented at trial, and the transcript from the preliminary hearing. In addition, Santos made a statement at

the hearing, and Avalos's uncle provided a victim impact statement.

At the outset of the hearing, the court provided a general overview of the applicable law, including that subdivision (b)(2) of section 1172.1 (§ 1172.1(b)(2)) created "'a presumption favoring recall and re-sentencing of the defendant, which may only be overcome if a court finds the defendant currently possesses an unreasonable risk of danger to public safety as defined in [subdivision (c) of section 1170.18].'" The court acknowledged that under section 1172.1 the court at resentencing must consider "post conviction factors, and those are laid out in the CDCR packet that I have."

The court also noted that it was statutorily required to apply any changes in law that reduce the defendant's sentence and that it was permitted to impose lesser included, uncharged enhancements. Citing subdivision (h) of section 12022.53 and subdivision (c) of section 1385 (§ 1385(c)), the court noted that it now had discretion to strike or dismiss the firearm enhancement or to impose a lesser included enhancement. With respect to dismissing the enhancement under section 1385(c), the court explained that it was required to "give great weight to any mitigating circumstances unless it endangers public safety," which means "'a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.'"

Before hearing arguments from counsel and the statements by Avalos's uncle and Santos, the trial court indicated that it would be "applying the presumption" and resentencing him. The court explained that it planned to reduce Santos's sentence by at

least two years, from 42 years to life to 40 years to life, by modifying the two-year sentence for count 2 to run concurrently rather than consecutively. The court indicated that it had not reached any decision concerning the firearm enhancement.

The People initially argued that the trial court should not recall Santos's sentence, arguing that the statutory presumption in favor of recalling the sentence had been overcome because Santos posed an unreasonable risk to public safety if released or resentenced. In response, the court explained that it did not have to make that determination under section 1172.1(b)(2), "because I'm applying the presumption." The court further reasoned, "I don't have to overcome the presumption" and "go into this analysis of posing an unreasonable risk of danger to public safety." The People subsequently submitted on recall of Santos's sentence and reduction of the sentence by two years, but the People opposed any further reduction. Defense counsel argued that Santos's postconviction good behavior supported striking the firearm enhancement or imposing a lesser enhancement.

The court adopted its tentative ruling and recalled Santos's sentence. In determining whether to reduce Santos's sentence beyond the previously indicated two-year reduction, the court considered the nature of the offenses, Santos's age when the offenses were committed, his prior criminal history, and his postconviction conduct in prison. The court highlighted some of Santos's specific achievements while in prison and noted the "laudatory" commendations that he had received. The court declined to strike

5

or dismiss the firearm enhancement or to impose a lesser enhancement, reasoning that dismissing the enhancement under section 1385(c) was not "in the interest or furtherance of justice and it would endanger public safety." The court emphasized that it was concerned about the nature of the underlying offense, particularly because Santos escalated a "fist fight" by firing a weapon and the shooting easily could have caused two deaths. The court noted that "there are fights all the time. If you go to SoFi stadium on the weekends . . . you might see a fight. Fights happen all the time. Doesn't mean you get to turn it into a fatal encounter." The court resentenced Santos to 40 years to life in state prison, composed of 15 years to life for count 1, a consecutive term of 25 years to life for the firearm enhancement, and a concurrent two-year term for count 2.

## DISCUSSION

Santos argues that we "should reverse the order denying [his] petition for resentencing." The argument is based on his contention that the trial court determined that the statutory presumption favoring recall and resentencing was overcome because Santos posed an "unreasonable risk of danger to public safety" under section 1172.1(b)(2). The argument lacks merit.

Section 1172.1(a)(1) provides that upon the recommendation of the Secretary of the CDCR, a trial court may "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, . . . provided the new sentence, if any, is no greater than the initial sentence."

6

Such a recommendation creates a presumption in favor of recalling and resentencing the defendant, "which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (§ 1172.1(b)(2).) Section 1170.18, subdivision (c), defines "'an unreasonable risk of danger to public safety'" as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of" subdivision (e)(2)(C)(iv) of section 667. "The eight felonies listed in that provision are referred to 'as "super strikes."'" (*People v. Lewis* (2024) 101 Cal.App.5th 401, 409; *People v. Valencia* (2017) 3 Cal.5th 347, 351.) In recalling and resentencing under section 1172.1, the trial court is required to consider "postconviction factors," including "the defendant's risk for future violence." (§ 1172.1, subd. (a)(5).)

Santos argues that "The Trial Court, In Holding That The Presumption In Favor Of Recall And Resentencing Had Been Overcome, Improperly And Erroneously Focused On Appellant's Offense While Ignoring Appellant's Postconviction Conduct And Rehabilitation." (Boldface omitted.) He also argues that "the trial court, in determining whether appellant posed an unreasonable risk of danger to public safety, failed to consider the length of appellant's sentence or the fact that, even if relief were granted, he would still have a life term to serve on his sentence, as well as the fact that, to be released, appellant would still be subject to the determination of the parole board as to whether he constituted such danger."

Both arguments presuppose that the trial court found that the statutory presumption favoring recall and resentencing was overcome because Santos posed a risk of committing a super strike offense. The arguments fail because the presupposition is false. The trial court did not find that Santos posed a risk of committing a super strike. Rather, the court expressly declined to make such a finding, applied the statutory presumption, recalled Santos's sentence, and resentenced him.

Moreover, as required by section 1172.1, subdivision (a)(5), the trial court in resentencing Santos did consider postconviction factors, including risk of future violence. At the hearing, the court confirmed that it had read and considered the case summary and evaluation report submitted by the CDCR, and Santos gave a statement at the hearing. In determining whether to strike or dismiss the firearm enhancement or to impose a lesser enhancement, the court described some of the rehabilitative efforts that Santos had made while in prison. In addition, the court emphasized that "fights happen all the time." The court's recognition that Santos escalated a fist fight by firing a weapon thus reflects a concern that Santos posed a risk of potentially deadly violence in the future if released.

In sum, the record reflects that the trial court did recall Santos's sentence and resentence him, did not find that Santos poses an unreasonable danger to public safety, and did consider Santos's postconviction conduct in the appropriate context, namely, at resentencing. For all of these reasons, Santos's arguments fail.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.

RAPHAEL
J.

9